PD-0320-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/13/2015 12:39:10 AM
Accepted 5/15/2015 10:02:55 AM
ABEL ACOSTA
CLERK

No. PD-0320-15

_____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AT AUSTIN, TEXAS

_____

JOHNNY GABRIEL CASTRO

Appellant-Petitioner

vs.

THE STATE OF TEXAS

Appellee-Respondent

_____

On Petition for Discretionary Review from the
Third Court of Appeals, Travis County
Appeal Number 03-12-00730-CR

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

FILED IN
COURT OF CRIMINAL APPEALS

May 15, 2015

ABEL ACOSTA, CLERK

GREGORY SHERWOOD
Attorney
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
State Bar No. 18254600

Attorney for Appellant-Petitioner
JOHNNY GABRIEL CASTRO

ORAL ARGUMENT REQUESTED

# Identity of Parties and Counsel

No. PD-0320-15; *Johnny Gabriel Castro v. The State of Texas*

Johnny Gabriel Castro (Defendant – Appellant):

Johnny Gabriel Castro
TDCJ #1780110
Allred Unit
2101 FM 369 North
Iowa Park, Texas 76367

Trial Counsel:                                    Appellate Counsel:

Bradley Urrutia (appointed)          Gregory Sherwood (appointed)
801 West Oltorf                               P.O. Box 200613
Austin, Texas 78704                        Austin, Texas 78720-0613

Shelly Troberman (2nd chair)
512 E. 11th Street, #110
Austin, Texas 78701

The State of Texas (Plaintiff – Appellee):

Beverly Mathews (trial)
Stephanie McFarland (trial)
M. Scott Taliaferro (appeal)
Travis County Assistant District Attorneys
PO Box 1748
Austin, Texas 78767

Trial Court:

Hon. Brenda Kennedy
403rd District Court, Travis County, Texas
P.O. Box 1748
Austin, Texas 78767

i

## Table of Contents

Identity of Parties and Counsel ....................................................... i

Table of Contents ......................................................................... ii

Table of Authorities ................................................................... iv

Statement Regarding Oral Argument ............................................ 1

Statement of the Case .................................................................. 2

Statement of Procedural History ................................................... 3

Questions Presented for Review .................................................. 3

Question 1: Did the Third Court of Appeals err in holding that Castro did not timely present his amended motion for new trial to the trial court, thus waiving any error in the failure to hold an evidentiary hearing, when the following acts show that timely presentment did occur: (1) the amended new trial motion requested a hearing, (2) stated the date that a hearing must be held or the amended motion would be overruled by operation of law, (3) contained a proposed order setting hearing date, (4) was delivered by Mr. Castro's appellate attorney to the trial court's coordinator the same date it was filed, and (5) when Castro's counsel later asked the court coordinator if a hearing would be set and presented a different proposed order for the judge's signature (CR 96), the coordinator, after presenting that order, which the judge did not sign, stated that the trial judge would not set a hearing, but would instead let the amended new trial motion be overruled by operation of law? ........................................................ 3

Question 2: Should this court define what acts constitute presentment of a motion for new trial, so that the bar will know what acts actually constitute presentment? Or should this court simply abolish the requirement of presentment of

a motion for new trial altogether? .......................................... 4

Argument Amplifying Reasons for Granting Review ................................. 4

    Facts Related to the Questions Presented ........................................... 4

    The Third Court Erred in Holding that the Record
    did not Show Timely Presentment of the Amended
    Motion for New Trial ...................................................................... 8

    Reasons for Granting Review ........................................................... 11

    This Court Should Either Define What Constitutes Presentment,
    or Abolish the Presentment Requirement Altogether ....................... 13

Conclusion and Prayer for Relief ................................................. 16

Certificate of Service ................................................................ 17

Certification of Word Count Compliance .................................... 17

Appendix

Third Court of Appeals' March 13, 2015
Unpublished Memorandum Opinion

Defendant's Amended Motion for New Trial, including
Affidavit of Brittany Banda and proposed Order Setting
Hearing on Defendant's Amended Motion for New Trial,
filed Nov. 1, 2012 (CR 86-92)

Unsigned Proposed Order Denying Defendant's Amended
Motion for New Trial Without an Evidentiary Hearing, with
Handwritten Notations by Defendant's Appointed Attorney
on Appeal, filed Nov. 15, 2012 (CR 96)

# Table of Authorities

Cases

*Butler v. State*, 6 S.W.3d 636
(Tex. App. – Houston [1st Dist.] 1999, pet. ref'd) .................................. 8, 9

*Carranza v. State*, 960 S.W.2d 76 (Tex. Crim. App. 1998) ................... 12, 13

*Estrella v. State*, 82 S.W.3d 483
(Tex. App. – San Antonio 2002, pet dism'd) ............................................ 8, 9

*Oestrick v. State*, 939 S.W.2d 232
(Tex. App.-Austin 1997, pet. ref'd) ............................................................ 9

*Owens v. State*, 832 S.W.2d 109
(Tex. App. – Dallas 1992, no pet.) .............................................................. 9

*Rozell v. State*, 176 S.W.3d 228 (Tex. Crim. App. 2005) ......................... 13

*Stokes v. State*, 277 S.W.3d 20 (Tex. Crim. App. 2009) ............................. 9

Statutes and Rules

Tex. R. App. P. 9.4(i)(1) ............................................................................ 17

Tex. R. App. P. 21.3(e) ................................................................................ 5

Tex. R. App. P. 21.6 ..................................................................................... 6

Secondary Authorities
Dix & Schmolesky, *Texas Practice: Criminal Practice
& Procedure*, § 50.16, vol. 43A, p. 640 (3d ed. 2011) ............................... 11

Maloney & Teague, *Texas Criminal Practice Guide*,
§ 80.01[4], p. 80-16 of Rel. 77 (Dec. 2009) ............................................... 11

# No. PD-0320-15

_____

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AT AUSTIN, TEXAS

_____

### JOHNNY GABRIEL CASTRO

Appellant-Petitioner

vs.

### THE STATE OF TEXAS

Appellee-Respondent

_____

On Petition for Discretionary Review from the
Third Court of Appeals, Travis County
Appeal Number 03-12-00730-CR

_____

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

<u>Statement Regarding Oral Argument</u>

Mr. Castro's court-appointed counsel requests oral argument. While

the issue of whether the Third Court of Appeals erred in holding that timely

presentment of the amended motion for new trial may be adequately

presented in the record and briefs, this court may have questions for counsel

1

on: (1) whether this court should define what acts constitute presentment of a motion for new trial, so that the bar will know how to present a motion for new trial, (2) whether this court should instead continue to decide this issue on a case-by-case basis, which frequently results in cases holding what does not constitute presentment, instead of stating what actions do satisfy the presentment requirement, or (3) whether this court should abolish the presentment requirement altogether.

## Statement of the Case

Johnny Gabriel Castro seeks discretionary review of the attached memorandum opinion of the Third Court of Appeals, which held that he failed to preserve error for appellate review on whether the judge of the 403rd District Court of Travis County, Texas (Hon. Brenda Kennedy), abused her discretion in failing to hold an evidentiary hearing on Mr. Castro's amended motion for new trial, based on its opinion that Castro failed to timely present that amended motion. *Slip op.* at 1-2 and 7-12. The other issues raised in the appeal, whether the evidence supported a knowing or intentional mental state, and whether the convictions for capital murder and the lesser-included offense of felony murder against the same decedent violated the double jeopardy clause , *slip op.* at 12-16, are not discussed in this petition.

2

## Statement of Procedural History

The Third Court of Appeals vacated the conviction and sentence for the lesser-included offense of felony murder, held that Mr. Castro did not preserve error for appellate review on whether the trial court abused its discretion in failing to hold an evidentiary hearing on Castro's amended motion for new trial, Clerk's Record ("CR") 86-92, and affirmed the convictions for capital murder and injury to a child in its unpublished March 13, 2015 memorandum opinion. This court granted an extension of time to file this petition for discretionary review until May 13, 2015.

## Questions Presented for Review

Question 1: Did the Third Court of Appeals err in holding that Castro did not timely present his amended motion for new trial to the trial court, thus waiving any error in the failure to hold an evidentiary hearing, when the following acts show that timely presentment did occur: (1) the amended new trial motion requested a hearing, (2) stated the date that a hearing must be held or the amended motion would be overruled by operation of law, (3) contained a proposed order setting hearing date, (4) was delivered by Mr. Castro's appellate attorney to the trial court's coordinator the same date it was filed, and (5) when Castro's counsel later asked the court coordinator if a hearing would be set and presented a different proposed order for the judge's signature (CR 96), the coordinator, after presenting that order, which the judge did not sign, stated that the trial judge would not set a hearing, but would instead let the amended new trial motion be overruled by operation of law?

3

Question 2: Should this court define what acts constitute presentment of a motion for new trial, so that the bar will know what acts actually constitute presentment? Or should this court simply abolish the requirement of presentment of a motion for new trial altogether?

<u>Argument Amplifying Reasons for Granting Review</u>

**Facts Related to the Questions Presented**:

Pages 2 through 7 of the Third Court's memorandum opinion provide an adequate discussion of the underlying facts which led to Mr. Castro's indictment and trial for three counts: (1) capital murder, (2) the lesser-included offense of felony murder which was vacated on double jeopardy grounds, and (3) injury to a child, all involving the same decedent. After the jury found Castro guilty of all three offenses, CR 62-64 (pdf 66-68), the jury heard punishment evidence and imposed 60 years for the felony murder count, and another 60 years for the injury to the child count. CR 52-53, pdf 56-57. The trial court assessed the mandatory punishment of life without parole for the capital murder conviction, as the State did not seek the death penalty. Reporter's Record ("RR") vol. 7, p. 7, l. 3-11. The district court ordered that these sentences run concurrently. RR, vol. 7, pp. 63-64. The written judgments of conviction are at CR 73-78, pdf 77-82.

Castro's appointed trial counsel filed a motion for new trial on October 12, 2012, the same day the judgments were entered, CR 73-78, pdf 77-82, asking for a new trial based on the verdict being contrary to the law and the evidence, and in the interest of justice. CR 69, pdf 73. This new trial motion also contained a "Presentment of Motion for New Trial," which stated the motion was presented within 10 days of its filing, citing Tex. R. App. P. 21.6, and signed by appointed trial counsel. CR 69, pdf 73.

The undersigned attorney was appointed for appeal on October 23, 2012. CR 93, pdf 97. After investigating the case and learning of a witness (Brittany Banda), who would have presented testimony of a cause of death that was not homicidal, but who did not testify at trial because of threats made against her, *see* CR 90-91, pdf 94-95, attached as an appendix, Mr. Castro's appointed appellate counsel timely filed a November 1, 2012 amended motion for new trial. *See* CR 86-92, pdf 90-96, attached as an appendix. The amended motion for new trial, argued that Ms. Banda's testimony would have presented a non-criminal cause of death of the child, and that she was prevented from testifying by threats of others, including her child's father, thus warranting a new trial under Tex. R. App. P. 21.3(e), which provides in part, "The defendant must be granted a new trial, or a new

5

trial on punishment, for any of the following reasons: (e) when a material defense witness has been kept from court by force, threats, or fraud. . . ." CR 87, pdf 91, attached. The November 1, 2012 amended motion for new trial informed the trial court that: (1) the motion was timely filed since it was due by November 12, 2012, (2) that a hearing must be held by December 26, 2012 (75 days after judgment), or it would be overruled by operation of law, (3) asked for an evidentiary hearing since it cited matters outside the record and included witness Brittany Banda's affidavit proffering her testimony and stating why she did not testify at trial, and (4) included a proposed order setting a hearing on this amended new trial motion. CR 86-92, pdf 90-96, attached. The amended new trial motion also contained a more detailed Certificate of Presentment, which stated, "I certify that I am counsel for the defendant in this case and that I presented this motion to the trial court pursuant to Tex. R. App. P. 21.6 by delivering a copy to the court coordinator for the 403rd District Court on November 1, 2012. [/s/] <u>Gregory Sherwood</u>". CR 88, pdf 92, attached, bracketing added.

On November 15, 2012, Mr. Castro's appellate counsel went to the 403rd District Court Coordinator's office to ask if a hearing was going to be set on the amended motion for new trial, and to present a proposed order

denying the amended motion for new trial for the trial court's signature if the court did not want to set a hearing, or wanted the motion be overruled by operation of law. CR 96, pdf 100, attached as appendix. The court coordinator walked the order back to the district judge's office, came out a few moments later, and informed this attorney that the trial judge would not sign the proposed order, and intended to let the amended new trial motion be overruled by operation of law. This writer made handwritten notes to that effect on the proposed order, and filed it with the District Clerk's office on Nov. 15, 2012. CR 96, pdf 100, attached.

Mr. Castro filed his brief in the Third Court of Appeals on May 10, 2013,[1] arguing in part that the trial court abused its discretion in failing to hold a hearing on the amended motion for new trial. *Slip op.*, at 1, attached. The State filed its brief on October 7, 2013 arguing that timely presentment was not shown, and therefore any error in the trial court's failure to hold a hearing was waived. Castro's counsel filed his reply brief, as well as a motion to abate the appeal, both on October 28, 2013. The Third Court

---

[1] The dates discussed in this paragraph can be confirmed by the Third Court of Appeals' Internet docket sheet, viewable at: www.search.txcourts.gov/Case.aspx?cn=03-12-00730-CR&coa=coa03.

7

denied the motion to abate the appeal three days later on October 31, 2013,

and issued its memorandum opinion on March 13, 2015, attached.

**The Third Court Erred in Holding that the Record did not
Show Timely Presentment of the Amended Motion for New Trial**:

Pages 7-12 of the Third Court's opinion discuss why that court

believed that the record did not show sufficient evidence of timely

presentment of the amended motion for new trial. The court summarized the

law in this area as follows:

> The trial court need not conduct a hearing if the motion
> for new trial is not timely presented to the trial court. [Citations
> omitted.] The presentment requirement directs a defendant to
> do more than simply file the motion for new trial with the trial
> court clerk. [Citation omitted.] This requirement is intended to
> ensure that the defendant puts the trial court on actual notice
> that he wants the trial court to take some action on the motion
> for new trial such as a ruling or a hearing on it. [Citation
> omitted.]
>
> Presentment may be proven in many ways, including by
> showing the judge's signature or notation on the proposed order
> or court's docket sheet or a ruling on the motion. [Citations
> omitted.] The presentment must be directed to the trial court or
> another authorized to act on behalf of the trial court. [Citation
> omitted.] <u>Presentation of a motion to the court coordinator can
> satisfy the presentment requirement</u>. *Estrella v. State*, 82
> S.W.3d 483, 485-86 (Tex. App. – San Antonio 2002, pet
> dism'd); *Butler v. State*, 6 S.W.3d 636, 641 (Tex. App. –
> Houston [1st Dist.] 1999, pet. ref'd). Examples of evidence that
> the court of criminal appeals has found sufficient to show
> presentment include notes on court-generated documents like
> docket sheets, which are most likely made by court personnel

and demonstrate court knowledge of the motion and thus presentment of the motion – though a judge's signature is not required. *Stokes v. State*, 277 S.W.3d [20,] at 24-25 [(Tex. Crim. App. 2009)]. In *Estrella*, the San Antonio court found that a court coordinator's filling out a "case setting form" and setting the case for a hearing satisfied the presentment requirement sufficiently to allow the court to consider whether the motion for new trial merited a hearing. 82 S.W.3d at 486. In *Butler*, the defendant informed the court coordinator about his timely filed motion for new trial and asked for a hearing, the court coordinator made an entry in the case management system scheduling the hearing, and the court of appeals found that Butler had sufficiently shown presentment of the motion. 6 S.W.3d at 638.

Case law also provides examples of what evidence does not show presentment. The court of criminal appeals wrote, "An unsigned notation on [a proposed order] cannot confidently be attributed to the court." *Stokes*, 277 S.W.3d at 24. The Dallas Court of Appeals held that a counsel's "Certification of Service and Presentment" stating that the motion was presented to the trial judge did not sufficiently prove presentment. *See Owens v. State*, 832 S.W.2d 109, 111 (Tex. App. – Dallas 1992, no pet.). The *Owens* court noted the absence of a proposed order setting a date on a hearing on the motion, of a separate motion for a hearing, and of any written notation that the motion was ever actually presented to the court or that the court was ever put on notice that the appellant wanted a hearing. *Id*. Relying on *Owens*, this Court held that "a self-serving statement by defense counsel, without more, is not sufficient evidence of presentment to the trial court." *Oestrick v. State*, 939 S.W.2d 232, 235 n.3 (Tex. App.-Austin 1997, pet. ref'd).[2]

---

[2] Unlike *Owens* and *Oestrick*, in this case there was more than this attorney's Certificate of Presentment showing that the amended motion for new trial was delivered to the court coordinator on Nov. 1, 2012, the date it was filed. The motion itself asked for an evidentiary hearing, it informed the trial court the date a hearing must be held or the motion would be overruled by operation of law, and it included a proposed order

*Slip op.* at 7-9 (underlining added, citations omitted as noted, some bracketing in original, case citation bracketing added by this writer).

The Third Court of Appeals held that appellate review had not been preserved on the issue of whether the trial court abused its discretion in failing to hold a hearing on Castro's amended motion for new trial, CR 68-92, based on a lack of timely presentment to the trial court. *Slip op.* at 1-2 and 7-12. The Third Court held that, "Appellant's motion for new trial was overruled by operation of law and the record does not contain any objection by appellant to the failure to conduct a hearing.[3] [Citation omitted.] Neither the November 1 Certificate of Presentment nor the handwritten November 15 note shows timely presentment of the motion for new trial under existing

setting a hearing date. CR 86-92, pdf 90-96, attached. Additionally, this attorney then presented a second proposed order denying the amended motion for new trial without a hearing to the court coordinator on Nov. 15, 2012, who presented it to the trial judge for her review, and then informed this attorney that the judge would not sign the order, but would instead let the amended new trial motion be overruled by operation of law. CR 96, pdf 100, attached. This writer made handwritten notations of these events on that order, and filed it with the district clerk that same day. *Id.*

Under the law as currently interpreted, a trial judge or court coordinator can prevent a defendant from proving timely presentment of a motion for new trial by refusing to sign an order, refusing to make a docket entry, and by court personnel's refusal to make any notation on the order, docket sheet, or court-generated document.

[3] Apparently, the Third Court did not consider Appellant's Motion to Abate Appeal, filed Oct. 28, 2013 and denied by that court on Oct. 31, 2013, mentioned in passing at p. 1 of the slip opinion, as an objection to the trial court's failure to hold a hearing.

10

case law." *Slip op.* at 10, attached. The appeals court also stated that, "We are not accusing appellant's counsel of dishonesty in his handwritten note, but are applying the standards set out by the court of criminal appeals regarding the nature of the proof necessary to show presentment to that note." *Slip op.* at p. 11, n. 5. (Citations omitted).

**Reasons for Granting Review**:

The problem with the doctrine of presentment of a motion for new trial is that frequently the case law tells members of the bar what does not constitute presentment, instead of providing the bar with a clear-cut definition of what acts would constitute presentment. As noted by two legal treatises using identical language, "While <u>Texas case law has shed little light on what it means to "present" a motion for new trial</u>, the Court of Criminal Appeals consistently has held that the filing of a motion for new trial alone is not sufficient to show presentment." See Maloney & Teague, *Texas Criminal Practice Guide*, § 80.01[4], p. 80-16 of Rel. 77 (Dec. 2009), and Dix & Schmolesky, *Texas Practice: Criminal Practice & Procedure*, § 50.16, vol. 43A, p. 640 (3d ed. 2011). Citations omitted, underlining added. This court has also admitted that, "This Court's case law has shed little light

11

on what it means to "present" a motion for new trial to the trial court. *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998).

In the case at bar, the Nov. 1, 2012 amended motion for new trial asked for a hearing because it was based on matters outside of the record, the amended motion included an affidavit from a witness who was prevented from testifying by threats of force, threats or fraud, the amended motion informed the trial judge of the dates that a hearing must be held or it would be overruled by operation of law, and it contained a detailed certificate of presentment stating that Castro's appellate counsel delivered the amended motion to the court coordinator the same day that it was filed. This case also included the Nov. 15, 2012 notations by this writer on a second proposed order denying the amended motion for new trial without a hearing, stating that the order was delivered to the court coordinator, who presented it to the trial judge, and that the coordinator informed this attorney that the trial court would not sign the order, and would instead allow the amended new trial motion to be overruled by operation of law. All of these events clearly show that the amended new trial motion was timely presented to the trial court. The only thing missing was a notation by either the trial judge or court coordinator as to these events. But as stated above, at pages 9-10, footnote 2

12

of this petition, if presentment can only be proven by either the trial court or the trial court's staff making these types of notations, with nothing that appellant's counsel does being sufficient to prove presentment, then all of the trail courts in this state will be able to prevent appellants from preserving appellate review on whether the trial court abused its discretion in failing to hold a hearing on a motion for new trial by refusing to make such notations on any court-generated documents, docket sheets, or proposed orders.

**This Court Should Either Define What Constitutes Presentment, or Abolish the Presentment Requirement Altogether**:

This court has stated that, "We have held that to present a motion in the context of a motion for new trial, the defendant must give the trial court *actual notice* that he timely filed a motion for new trial and requests a hearing on the motion for new trial." *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). Instead of defining what acts constitute presentment of a motion for new trial, this court has stated a non-exhaustive list of examples, which may include obtaining the trial court's ruling on the motion for new trial, the judge's signature or notation on a proposed order, or a hearing date on the docket sheet. *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). The problem with this case-by-case approach on what acts constitute presentment is that too often, this court or the

13

intermediate appellate courts, rule that the facts of that appeal did not constitute presentment, leaving the bar of this state to continue to guess as to what acts would meet the presentment requirement.

In this petition, the facts showed that Castro's appellate counsel (this writer) did more than file an amended motion for new trial with the clerk, which would clearly not show presentment. The amended motion requested a hearing, contained a proposed order setting hearing date, informed the trial court when that hearing needed to be held before it would be overruled by operation of law, contained grounds for granting a new trial and an affidavit from a witness who was prevented from testifying at trial by threats of force, coercion or fraud, and contained a certificate of presentment by this writer stating that the amended motion for new trial was hand-delivered to the court coordinator the same date that the amended new trial motion was filed. When no order setting hearing was signed, this attorney presented a second proposed order, this time denying the amended motion for new trial without a hearing, but this order was not signed by the trial judge, and the court coordinator informed this writer that the court would not sign the proposed order, but would instead allow it to be overruled by operation of law. Under these circumstances, this court should hold that presentment of the amended

14

new trial motion was shown, for it is clear that the trial court was provided actual notice that a hearing on the amended motion for new trial was requested.

If this court were to actually define what acts constitute presentment of a motion for new trial, appellants' attorneys would actually know what constitutes presentment, instead of engaging in the current practice of having to guess whether the actions they have taken are sufficient to constitute presentment, which would preserve appellate review of the trial court's failure to hold a hearing on a motion for new trial. Alternatively, this court should consider eliminating the requirement of presentment altogether. While presentment may serve the purpose of requiring that the trial court receive actual notice that a hearing is requested on a new trial motion, the continuing uncertainty as to what acts constitute presentment prevent appellate review of this issue if the appellate court holds that the acts taken in that case are insufficient. And as this writer suggested earlier in this petition, under current case law, a trial court and that court's staff can prevent any appellate review of the failure to conduct a hearing on a motion for new trial by simply refusing to sign any proposed orders for hearing or orders ruling on the new trial motion, and by having court staff refuse to

15

make any docket entry notations, or notations on the motions, court-generated documents or proposed orders. Under this interpretation, an appellant's attorney will never be able to prove that he or she timely presented a motion for new trial so long as the court and court staff refuse to make any orders or docket entries or notations to that effect.

Conclusion and Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, appellant JOHNNY GABRIEL CASTRO respectfully prays that this court grant this petition for discretionary review, set this cause for oral argument and for briefing on the merits, and that this court issue an opinion reversing the Third Court's March 13, 2015 opinion holding that Mr. Castro did not timely present his amended motion for new trial, and instead hold that timely presentment did occur. This court's opinion should remand this case to the Third Court of Appeals with instructions for it to abate this appeal and remand the case to the 403rd District Court of Travis County, Texas for an evidentiary hearing on Castro's amended motion for new trial. Once that hearing is held and a decision is made by the 403rd District Court on whether to grant or deny the amended motion for new trial, the appeal should then be reinstated on the Third Court of Appeals' docket so that it may decide the merits of the 403rd

District Court's decision on whether to grant or deny Castro's amended motion for new trial.

Respectfully submitted,

/s/ *Gregory Sherwood*

GREGORY SHERWOOD
Attorney
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
email: gsherwood@mail.com

Attorney for Appellant-Petitioner
JOHNNY GABRIEL CASTRO

Certificate of Service

I certify that a true copy of this document was served on May 13, 2015 by email upon the Travis County District Attorney's Office, P.O. Box 1748, Austin, Texas 78767 at the following email addresses: AppellateTCDA@co.travis.tx.us and scott.taliaferro@co.travis.tx.us, and upon the Office of the State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711 at its email address: information@spa.texas.gov.

/s/ *Gregory Sherwood*

Certification of Word Count Compliance

According to the WordPerfect program used to create this document, there are 3,331 words in this petition, excluding the portions listed in Tex. R. App. P. 9.4(i)(1).

/s/ *Gregory Sherwood*

# APPENDIX

Third Court of Appeals' March 13, 2015
Unpublished Memorandum Opinion

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00730-CR

Johnny Gabriel Castro, Appellant

v.

The State of Texas, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. D-1-DC-12-904069, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Johnny Gabriel Castro guilty of capital murder and two other offenses related to the death of his then-girlfriend's seven-month-old daughter. The jury assessed a punishment of life in prison for capital murder and also assessed punishments of sixty years in prison for the offenses of felony murder and injury to a child. The trial court ordered that these sentences run concurrently. Appellant contends that the trial court erred by refusing to hold a hearing on his amended motion for new trial and by allowing that motion to be overruled by operation of law. He urges that we either abate for a hearing on the motion or grant the motion outright. He also contends that the evidence is insufficient to show that he acted intentionally or knowingly in injuring and killing the child and that this Court should, therefore, (1) reverse the conviction for capital murder and render an acquittal and (2) reverse the conviction for injury to a child and remand for a new hearing on punishment. He argues alternatively that the convictions and sentences for capital murder and murder of the same child violate the constitutional prohibition of

multiple punishments for the same offense and that we should vacate the murder conviction. We will affirm the capital murder conviction, vacate the murder conviction and sentence, and affirm the judgment in all other respects.

## BACKGROUND

The child victim was born in July 2010 to her mother, Veronica, who began dating appellant about two months later.[1] By February 2011, appellant, Veronica, and the child were essentially living together in a succession of different relatives' homes. Veronica testified that appellant and her daughter bonded at first. As time went by, she said, that bond frayed. She testified that appellant criticized the child daily as spoiled and jealous of him. Veronica testified that appellant did not like when the baby cried and believed that Veronica should not have consoled the crying child, but rather should have ignored her or disciplined her. Veronica said that once, when the three were riding in a car together, appellant attempted to put his hand over the crying baby's mouth. Veronica testified that she stopped him from doing so, but when they arrived at home appellant blocked her access to the baby, yelled at the baby, and tried again to cover the baby's mouth.

The weekend before February 28, 2011, appellant, Veronica, and her baby stayed with appellant's aunt. Veronica said that she and the baby slept in the aunt's daughter's room and that appellant slept on the couch, although appellant's aunt testified that appellant slept in the bedroom. Appellant's aunt also testified that the baby had bite marks on her arm that appellant confessed to inflicting, although the aunt believed that the marks were more likely inflicted by Veronica.

---

[1] Appellant was not this child's father, although he later referred to himself as such.

2

Veronica testified that on February 28, 2011, the child had mild diarrhea, but was not too fussy. She said that she woke up and gave the baby a bottle and played with her for about an hour in the living room. Veronica testified that this apparently disrupted appellant's sleep because, when she took the baby back to the bedroom for a nap, appellant burst[2] into the room and said, "If I can't sleep, no one in this house can sleep." She said he continued to yell to make sure the baby stayed awake.

Veronica had a job interview that afternoon at 1:30 and intended to leave her child with her grandmother who lived near the interview site. Appellant drove Veronica to the interview, arriving slightly late. As Veronica walked toward the office building, appellant volunteered to keep the child rather than dropping her at Veronica's grandmother's apartment. Veronica assented even though appellant had never taken care of her daughter by himself. Appellant's aunt testified that appellant had helped raise his brothers and sisters and that it was not unusual for him to change a diaper.

Veronica finished her interview around 3 p.m. and called appellant to come pick her up. She said he told her that her daughter had fallen asleep and that he would come pick her up. Less than fifteen minutes later, appellant called back and said that the child was blue and he repeatedly said that he did not know what to do. Veronica told him to call 911 then went to the hospital with her grandmother. Veronica testified that she thought it strange that, when she called appellant again, he asked that she come see him instead of going to the hospital to be with her child.

---

[2] On cross-examination, Veronica conceded that she did not tell police that appellant "burst" into the room. She testified that she omitted that aspect initially because she did not then believe that appellant had killed her daughter and had not wanted to say things that might get him wrongly convicted.

A firefighter testified that he arrived at appellant's aunt's house at 3:25 p.m. and found the baby limp, not breathing, and without a pulse. He administered cardiopulmonary resuscitation until emergency medical technicians arrived. A second firefighter testified that appellant said that when he went to wake the baby, he found her lying facedown in a pillow on the bed. Paramedics were able to restore a pulse that improved as they went to the hospital.

At the hospital, however, Veronica learned that her child's brain had swollen to the point that the child was unlikely to survive. Tests the next morning confirmed that the child had no brain activity. After family members held the child and said goodbye, life support was removed, and the child died.

The medical director of the pediatric intensive care unit at Dell Children's Hospital, Rene Higgerson, testified that the child's respiration was irregular even with the ventilator. She found no external evidence of injury, no skeletal trauma, no bruising and no bleeding in the child's eyes or brain. She also found no sign of respiratory illness or influenza. Higgerson testified that she would expect a developmentally appropriate seven-month-old child to resist intentional suffocation and to be able to avoid suffocating accidentally absent unusual circumstances. She testified that it is possible to suffocate someone to the point that death is not immediate, but follows when the person's injured brain swells too much. Another pediatrician, Dr. George Edwards, testified that irreversible brain damage can occur after as little as two minutes without oxygen.

Travis County Deputy Medical Examiner Dr. Satish Chundru performed the autopsy and found faint bruises on the front side of the child's abdomen and on her forehead. He testified that the bruising might have become visible after the child's death. He testified that the abdominal bruising might have come from a person pressing his thumbs into the child's side. He conceded that

4

the bruising might be consistent with someone trying to wake the child. He also testified that the forehead bruising might be consistent with an accidental head butt while shaking the child or while forcing her head into an adult's shoulder or chest in an attempt to soothe or quiet the child.

Veronica testified that appellant told her "multiple, multiple stories" about what happened with the child. She said that appellant told her on the day of the incident that he did not know what had happened. She said he later told her he was in the bathroom and heard a thud when the child fell off of the couch. Appellant reported that he squeezed the child to comfort her. She recalled appellant saying another time that he fell asleep with the baby on the couch and accidentally suffocated her, and also told a similar story saying they fell asleep on the bed. The jury saw a text from appellant's phone telling Veronica that the baby "did pass in my arms and i didnt kno it. But im truly sorry for our babygurl and sorry that it was me."[3]

Police officers testified that, although they did not originally believe that appellant intentionally killed the child, his conduct—including his manner during questioning and his changing stories—led them to believe that he did. Austin Police Department Detective Kerry Scanlon said that appellant originally told him that he gave the baby a bottle, moved all the pillows and blankets off of the bed, and put the child on the bed. Scanlon said appellant told him that he did not sleep with the baby that afternoon. Scanlon said that appellant told him that Veronica called him at 3:05 p.m., he packed the car, and then he found the baby blue and called Veronica. Scanlon testified that he was surprised that appellant took twelve minutes between these telephone calls. He said that appellant was matter-of-fact in the interview and referred to the baby as jealous and spoiled. APD Detective Brent Bailey testified that appellant's phrasing when discussing the

---

[3] Spelling, capitalization, and punctuation are as presented in the exhibit.

5

crucial events surrounding the baby's death undercut his credibility. Bailey testified that appellant first said that nothing happened, then drastically changed his story. Bailey also said that appellant mentioned injuries to the child's forehead and abdomen—the areas where faint bruises found by the medical examiner were not seen by the treating physicians. APD Detective Anthony Nelson testified that appellant said that he held the baby too tight and that she stopped breathing, but that he thought she was breathing after he laid her down. Nelson said that appellant was controlling and thought that police were following him when they were not. In the March 8, 2011 interview with police, when asked how he thought the child died appellant said, "She suffocated." When asked how, appellant said, "I was holding her too tight. . . . She slowly stopped her breathing. I had her. Her face was in my shoulder." He also said. "It was not intentionally. I would not hurt that baby. . . . I'm not saying I killed her."

After the jury found appellant guilty and the punishment was assessed on October 12, 2011, appellant filed a motion for new trial that same day asserting generally that the verdict was against the law and evidence and that a new trial was in the interest of justice. On November 1, 2011, appellant filed an amended motion for new trial stating that a material defense witness, Brittany Banda, was kept from testifying at trial by force or threats. *See* Tex. R. App. P. 21.3(e). Appellant attached Banda's affidavit to his motion. Banda stated that she stopped by the house where appellant was staying and overheard him attempting to soothe the crying baby. She said that she went in the house and that appellant told her that the baby had fallen. She stated that the baby, who fell asleep while they were talking, looked pale as if sick. She stated that appellant told her that the baby had been sick but that Veronica did not take her to the doctor. Banda stated that appellant also told her that he wanted to end his relationship with Veronica, but that Veronica told him she

6

would hurt herself and the baby if he did. Banda said that appellant laid the baby on the bed and that they talked in the living room for a while longer. She stated that, when appellant went to check on the baby, they noticed that she was a light blue color. Appellant panicked and grabbed the child, attempting to wake her, and told Banda to leave, which she did. Banda said that she would have presented this evidence at the trial but for the fact that she was threatened and told not to testify by others, including her own child's father. The motion for new trial was overruled without a hearing and by operation of law.

## DISCUSSION

Appellant contends that the trial court erred by refusing to hold a hearing on his amended motion for new trial and by allowing that motion to be overruled by operation of law. He also argues that he should be acquitted of capital murder because the evidence is legally insufficient to show that he acted intentionally or knowingly in causing the child's death. He argues further that we should reverse the finding of an intentional-or-knowing mental state with respect to the injury-to-a-child conviction and remand for a sentence within the range appropriate for that offense with a less culpable mental state. He also contends that the convictions for capital murder and murder of the same child violate the constitutional prohibition of multiple punishments for the same offense.

**The trial court did not abuse its discretion by overruling the motion for new trial without holding a hearing on that motion.**

While appellant contends that the trial court should have held a hearing on his motion for new trial, the State contends that appellant did not preserve this issue for appellate review.

The trial court need not conduct a hearing if the motion for new trial is not timely presented to the trial court. *See* Tex. R. App. P. 21.6 (requiring defendant to present motion for new

7

trial to trial court within 10 days of filing); *see also Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005) (right to hearing on motion for new trial is not absolute); *Burrus v. State*, 266 S.W.3d 107, 115 (Tex. App.—Fort Worth 2008, no pet.). The presentment requirement directs a defendant to do more than simply file the motion for new trial with the trial court clerk. *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009). This requirement is intended to ensure that the defendant puts the trial court on actual notice that he wants the trial court to take some action on the motion for new trial such as a ruling or a hearing on it. *Id.*

Presentment may be proven in many ways, including by showing the judge's signature or notation on the proposed order or court's docket sheet or a ruling on the motion. *See Stokes*, 277 S.W.3d at 24-25; *Carranza v. State*, 960 S.W.2d 76, 79-80 (Tex. Crim. App. 1998); *Rodriguez v. State*, 425 S.W.3d 655, 662-63 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The presentment must be directed to the trial court or another authorized to act on behalf of the trial court. *Carranza*, 960 S.W.2d, at 79. Presentation of a motion to the court coordinator can satisfy the presentment requirement. *Estrella v. State*, 82 S.W.3d 483, 485-86 (Tex. App.—San Antonio 2002, pet dism'd); *Butler v. State*, 6 S.W.3d 636, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Examples of evidence that the court of criminal appeals has found sufficient to show presentment include notes on court-generated documents like docket sheets, which are most likely made by court personnel and demonstrate court knowledge of the motion and thus presentment of the motion—though a judge's signature is not required. *Stokes*, 277 S.W.3d at 24-25. In *Estrella*, the San Antonio court found that a court coordinator's filling out a "case setting form" and setting the case for a hearing satisfied the presentment requirement sufficiently to allow the court to consider whether the motion for new trial merited a hearing. 82 S.W.3d at 486. In *Butler*, the defendant informed the court coordinator about

8

his timely filed motion for new trial and asked for a hearing, the court coordinator made an entry in the case management system scheduling the hearing, and the court of appeals found that Butler had sufficiently shown presentment of the motion. 6 S.W.3d at 638.

Case law also provides examples of what evidence does not show presentment. The court of criminal appeals wrote, "An unsigned notation on [a proposed order] cannot confidently be attributed to the court." *Stokes*, 277 S.W.3d at 24. The Dallas Court of Appeals held that a counsel's "Certification of Service and Presentment" stating that the motion was presented to the trial judge did not sufficiently prove presentment. *See Owens v. State*, 832 S.W.2d 109, 111 (Tex. App.—Dallas 1992, no pet.). The *Owens* court noted the absence of a proposed order setting a date on a hearing on the motion, of a separate motion for a hearing, and of any written notation that the motion was ever actually presented to the court or that the court was ever put on notice that the appellant wanted a hearing. *Id.* Relying on *Owens*, this Court held that "a self-serving statement by defense counsel, without more, is not sufficient evidence of presentment to the trial court." *Oestrick v. State*, 939 S.W.2d 232, 235 n.3 (Tex. App.—Austin 1997, pet. ref'd).

Appellant cites two actions he contends show proper presentment. He included a Certificate of Presentment below his attorney's signature line on Defendant's Amended Motion for New Trial, filed on November 1, 2012. This printed certificate states that the attorney presented the motion to the court by delivering a copy to the court coordinator. Appellant also attached a proposed order setting a hearing to his motion. On November 15, 2002, appellant filed a proposed Order Denying Defendant's Amended Motion for New Trial Without an Evidentiary Hearing. On this printed and unsigned order, appellant's attorney handwrote the following note: "Nov. 15, 2012—presented this proposed order to court coordinator, who presented it to J. Kennedy. Judge

9

indicated she would let 75-day period elapse and did not sign proposed order." Appellant's attorney signed this handwritten statement and the clerk file-stamped the proposed order containing it.

The State contends that appellant did not show that he timely and properly presented the amended motion to the trial court and, therefore, did not preserve the failure to hold a hearing as an issue reviewable on appeal. The State argues that both the certification and the handwritten note are self-serving statements by defense counsel. The State also contends that the note written on a copy of a proposed order denying a hearing does not show presentment of the motion itself and, because it is dated November 15, does not show presentment of the motion for new trial within ten days of filing. The State argues that appellant did not preserve the hearing issue because he did not obtain a ruling or object to the refusal to rule on his request for a hearing. *See* Tex. R. App. P. 33.1(a)(2). "Where a motion for new trial is overruled by operation of law, the trial court's failure to conduct a hearing, without more, is simply a 'failure to rule' on the request for a hearing," and the claim is preserved for review only if the defendant has objected to the failure to rule. *Oestrick*, 939 S.W.2d at 235.

We conclude that appellant has not preserved for appellate review any error in the trial court's failure to hold a hearing on the motion for new trial either through objection or timely presentment of the motion for new trial. Appellant's motion for new trial was overruled by operation of law and the record does not contain any objection by appellant to the failure to conduct a hearing. *See id.* Neither the November 1 Certificate of Presentment nor the handwritten November 15 note shows timely presentment of the motion for new trial under existing case law. The November 1 Certificate of Presentment provides, "I certify that I am counsel for the defendant in this case and that I presented this motion to the trial court pursuant to Tex. R. App. P. 21.6 by delivering a copy

10

to the court coordinator for the 403rd District Court on November 1, 2012." This certification is similar to the statement in the Certification of Service & Presentment that was part of the motion for new trial in *Owens* that "[t]he undersigned attorney for Defendant hereby certifies to the Court that true and correct copies of the foregoing were presented to the Trial Judge . . . ." *Owens*, 832 S.W.2d at 111. The *Owens* court deemed this certification "no evidence" of presentment. *Id*.; *see also Oestrick*, 939 S.W.2d at 235 n.5 (disregarding as insufficient evidence of presentment "a statement in appellant's notice of appeal that the motion for new trial was presented to the court 'through counsel.'"). Appellant's counsel's November 15 handwritten note on the unsigned proposed Order Denying Defendant's Amended Motion for New Trial Without an Evidentiary Hearing stating that the order had been presented to the judge by the court coordinator was made three days after the ten-day period for presentment lapsed.[4] *See* Tex. R. App. P. 21.6; *see also id.* 4.1(a). Further, this notation is by a party on a party-generated document rather than a note on a court-generated document like a docket sheet or written by the judge or court personnel—distinctions that weigh against a showing that the motion was presented to the trial court.[5] *See Stokes*, 277 S.W.3d at 24-25; *Carranza*, 960 S.W.2d at 80 n.6.

---

[4] The rule permits the court to exercise discretion to allow presentment of the motion for new trial more than ten days after the motion is filed (but less than 75 days after the sentence is imposed), Tex. R. App. P. 21.6, and the November 15 notation was filed within that window. But, after the initial ten-day period, the rule by its own terms makes the court's decision of whether to allow presentment discretionary. *See id.* There is no showing that the trial court abused its discretion in choosing not to permit presentment of the motion.

[5] We are not accusing appellant's counsel of dishonesty in his handwritten note, but are applying the standards set out by the court of criminal appeals regarding the nature of the proof necessary to show presentment to that note. *Stokes v. State*, 277 S.W.3d 20, 25 (Tex. Crim. App. 2009); *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998).

11

The record does not show that appellant timely presented his motion for new trial to the trial court or objected to the trial court's failure to hold a hearing. Appellant has not shown that the trial court erred or abused its discretion by failing to hold a hearing on his motion for new trial. *See Stokes*, 277 S.W.3d at 24-25; *see also Oestrick*, 939 S.W.2d at 235.

**The evidence is sufficient to support the findings that appellant acted knowingly or intentionally.**

Appellant argues that the State failed to show that he had the requisite intent when he injured and killed the child.[6] The court instructed the jury on the following culpable mental states relating to the offenses in this case:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the

---

[6] Appellant can challenge the sufficiency of the evidence supporting his guilt even if his testimony at the punishment phase might relate to the elements of the offense. *See Jacobson v. State*, 398 S.W.3d 195, 202 (Tex. Crim. App. 2013).

12

result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code § 6.03. The court instructed the jury that a person commits murder when he intentionally or knowingly causes the death of another and that, if the murderer knows that the victim is under six years old, the offense is capital murder. *See id.* § 19.02(b)(1), .03(a)(8). The court also instructed the jury that a person commits the offense of injury to a child when he intentionally or knowingly causes serious bodily injury to a child aged fourteen years or younger. *See id.* § 22.04.

When reviewing the sufficiency of the evidence supporting a conviction, we consider all of the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and a defendant's guilt can be established with circumstantial evidence alone. *Temple*, 390 S.W.3d at 359. Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the defendant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In circumstantial-evidence cases, every fact need not point directly and independently to the guilt of the defendant; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Id.* at 49. The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Jackson*, 443 U.S. at 319. When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and defer to that determination. *Temple*, 390 S.W.3d at 360 (citing *Jackson*, 443 U.S. at 326).

Appellant cites the police officers' admission that, despite intense questioning, he never said that he intentionally killed the child. He contends that he was only reckless or criminally negligent when he held the child too tightly—levels of culpability that do not satisfy the murder or capital murder charges given in this case. *See* Tex. Penal Code §§ 19.02(b)(1), .03(8). When squarely presented with the choice of culpability levels, however, the jury determined otherwise.

There was evidence that appellant favored a more physically aggressive method of quieting the child. Veronica testified that she and appellant had an ongoing disagreement over how to handle the child when she cried. Veronica said she preferred to comfort the crying child, but appellant advocated ignoring the child. Veronica testified about an incident in a car when appellant tried to place his hand over the child's mouth to stop her crying. Veronica said that she grabbed appellant's hand to discourage him from touching the child but, when they arrived at their destination, appellant got out of the car, blocked Veronica from the backseat, yelled at the child, and covered her mouth with his hand.

The record also contained evidence that appellant's relationship with the child was deteriorating. There was testimony that appellant and the child had bonded early on, but that the child eventually seemed not to want to be around appellant. Veronica and Detective Scanlon testified that appellant described the child as spoiled and jealous of him. Veronica also testified that appellant had been angry at her and the child that morning for interrupting his sleep. Nevertheless, when appellant took Veronica to her job interview, appellant abruptly changed the childcare plan to keep the child by himself for the first time. What happened next is, as discussed above, the subject of many different stories by appellant. In one of these variations, appellant told Detective Nelson that he held the baby too tight, that she stopped breathing in his arms, and that she died in his arms.

14

The medical evidence supported a finding that the child suffocated. The examiner found that the child's brain was deprived of oxygen, which led to her death. Although the physicians could not say what caused the child to suffocate, Dr. Higgerson testified that she would not expect a developmentally appropriate seven-month-old—and the only evidence is that this child was progressing at least normally—to suffocate accidentally absent unusual circumstances. Dr. Higgerson also testified that she would expect a seven-month-old child to resist being suffocated. Although Dr. Higgerson said she did not find any bruises on the child, the medical examiner Dr. Chundru reported bruising on the child's sides consistent with being squeezed by someone who pressed their thumbs in. Dr. Edwards testified that irreversible brain damage can occur after two minutes without oxygen.

Appellant told police that he loved the child and did not intend to hurt her. He at times insisted that the child was still breathing when he left her and gave alternate theories on how the child might have died other than by his hand. The jury heard all of the testimony and, as the sole judge of credibility, found his denials not credible. *Jackson*, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that appellant intentionally or knowingly injured and killed the child.

**Conviction for murder in addition to the punishment for capital murder of the same child violates double-jeopardy prohibition.**

Appellant complains that the trial court violated the constitutional prohibition of double jeopardy because it assessed punishments for capital murder and for the lesser-included offense of murder based on the same actions against the same child. *See* U.S. Const. amend. V;

15

Tex. Const. art. I, § 14.  The State agrees that, if we determine that murder is a lesser-included offense of capital murder, we should vacate the conviction for the lesser offense.

We conclude that, as charged, murder is a lesser-included offense of capital murder. *See Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) (felony murder); *see also* Tex. Penal Code §§ 19.02, .03.  The jury assessed a term of life in prison without parole for the capital murder conviction and a lesser term of sixty years in prison for the murder conviction.  We therefore vacate the judgment of conviction for the lesser-included offense of murder without regard to the merits or the sufficiency of the supporting evidence.  *See Bigon v. State*, 252 S.W.3d 360, 372-73 (Tex. Crim. App. 2008).  Contrary to appellant's request that we render judgment of acquittal on the murder charge, we conclude that we are authorized only to vacate the murder conviction and the related sentence.  *See id.*

## CONCLUSION

We vacate the conviction and sentence for the lesser-included offense of murder and affirm the judgment in all other respects.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed in part; Vacated in part

Filed:  March 13, 2015

Do Not Publish

16

Defendant's Amended Motion for New Trial, including Affidavit of Brittany Banda and proposed Order Setting Hearing on Defendant's Amended Motion for New Trial, filed Nov. 1, 2012 (CR 86-92)

No. D-1-DC-12-904069

| THE STATE OF TEXAS | § | IN THE 403RD DISTRICT |

THE STATE OF TEXAS          §          IN THE 403RD DISTRICT
                            §
vs.                         §          COURT OF TRAVIS
                            §
JOHNNY CASTRO               §          COUNTY, TEXAS

## DEFENDANT'S AMENDED MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES the defendant, JOHNNY CASTRO, who files Defendant's Amended Motion for New Trial, respectfully stating as follows:

### Statement of the Case

Mr. Castro was found guilty by a jury verdict and sentenced by this court on October 12, 2012. Mr. Castro's appointed trial attorney timely filed a notice of appeal and a motion for new trial. The undersigned attorney was appointed to represent Mr. Castro on appeal, and is filing this amended motion for new trial on Castro's behalf. Since Castro was sentenced on October 12, 2012, this motion for new trial must be filed by Monday, November 12, 2012 to be timely under Tex. R. App. P. 4.1(b) and 21.4. Any hearing on this motion must be conducted within 75 days after the sentencing date, or by Wednesday, December 26, 2012. Tex. R. App. P. 21.8(a). If no ruling is made on the motion by that date, it is overruled by operation of law. Tex. R. App. P. 21.8 (c).

### Necessity/Request for an Evidentiary Hearing

Because this motion raises matters outside the trial record, it is properly verified by a supporting affidavit, and the motion was timely filed and presented, an evidentiary hearing is warranted, and it would be an abuse of discretion to deny Mr. Castro such a hearing. *See Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1992), *Martinez v.*

1

Filed in The District Court
of Travis County, Texas

NOV 0 1 2012

At___10:36 ọ.м.
Amalia Rodriguez-Mendoza, Clerk

*State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002) and *Hobbs v. State*, 298 S.W.3d 198, 199-203 (Tex. Crim. App. 2009). The purpose of the hearing is to fully develop the issues raised in the new trial motion, *Martinez*, 74 S.W.3d at 21, as well as to determine whether the case should be retried or to complete the record for presenting issues on appeal. *Hobbs*, 298 S.W.3d at 199. As a prerequisite to obtaining a hearing, the motion must be supported by affidavit specifically showing the grounds for attack. *Reyes*, 849 S.W.2d at 816; *Martinez*, 74 S.W.3d at 21; *Hobbs*, 298 S.W.3d at 199. The affidavits need not reflect each and every component legally required to establish relief or present a prima facie case, but rather must merely reflect that reasonable grounds exist for holding that a new trial could be granted. *Reyes*, 849 S.W.2d at 816; *Martinez*, 74 S.W.3d at 21-22, *Hobbs*, 298 S.W.3d at 199-200.

The affidavit attached to this amended motion presents reasonable grounds that a new trial could be granted. Accordingly, defendant Johnny Castro respectfully requests a hearing on this motion prior to December 26, 2012, the 75th day after judgment, when this motion will be overruled by operation of law. Tex. R. App. P. 21.8 (a), (c). A proposed order setting hearing is attached.

<u>Grounds for Requesting New Trial</u>

Tex. R. App. P. 21.3(e) provides in part, "The defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons: (e) when a material defense witness has been kept from court by force, threats, or fraud. . . ." The affidavit of Brittany Banda attached to this motion shows that Ms. Banda is a material defense witness who was kept from testifying at Mr. Castro's trial by force or threats. Ms. Banda's testimony proffered in the affidavit is material to the question of Mr. Castro's

2

guilt or innocence, as it provides another explanation for what occurred on the date in question which differs from testimony presented at trial. The affidavit also states that Ms. Banda was threatened by others not to testify at trial, thus satisfying Rule 21.3(e).

A proposed order setting this motion for hearing is attached.

### Conclusion

For the foregoing reasons, defendant JOHNNY CASTRO respectfully prays that this court set this matter for an evidentiary hearing, and set aside the verdict and judgment herein and grant a new trial.

Respectfully submitted,

Gregory Sherwood
Attorney
PO Box 200613
Austin, Texas 78720-0613
(512) 219-1677
Texas Bar # 18254600

Court-Appointed Attorney on Appeal
for Defendant Johnny Castro

### Certificate of Presentment

I certify that I am counsel for the defendant in this case and that I presented this motion to the trial court pursuant to Tex. R. App. 21.6 by delivering a copy to the court coordinator for the 403rd District Court on November 1, 2012.

Gregory Sherwood

3

## Certificate of Service

I hereby certify that a true copy of this document was served by hand delivery upon the Travis County District Attorney's Office, 509 W. 11th Street, Blackwell-Thurman Justice Center, 2nd Floor, Austin, Texas 78701, on November 1, 2012.

_Gregory Sherwood_
Gregory Sherwood

4

No. D-1-DC-12-904069

| THE STATE OF TEXAS | § | IN THE 403RD DISTRICT |
| | § | |
| vs. | § | COURT OF TRAVIS |
| | § | |
| JOHNNY CASTRO | § | COUNTY, TEXAS |

## AFFIDAVIT OF BRITTANY BANDA

| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF TRAVIS | § | |

BEFORE ME, the undersigned authority, personally appeared Brittany Banda, who being by me duly sworn did state upon her oath the following:

"My name is Brittany Banda. I am capable of making this affidavit and I have personal knowledge of the facts stated herein. I declare under penalty of perjury that the facts stated in this affidavit are true and correct.

On February 28, 2011, my mother and I were shopping around getting prepared for my daughter to be born. I was 7 going on 8 months at the time. We were driving & I had noticed Johnny's car. So I (Brittany) had told my mom to stop the car please & she did. I had gotten out the car & when I had walked up the steps, I heard the baby crying. I knocked on the door and Johnny answered, he was holding Melanie in his arms caressing her trying to calm her down saying "daddy's here its ok baby". He invited me in. I had asked what was wrong with her & he told she had just fallen. So he was rocking & caressing her. She fell asleep in his arms after crying so much. I had told him that she (Melanie) looked pale as if she was sick. He told me she had been for the past few days, just Melanie's mom didn't bother taking her to the doctor to get checked. While we were

talking he had told me what had happened that morning with him and Veronica. He mentioned to me that he wanted to end their relationship for a while, but she had told him that she would hurt herself & baby Melanie. He didn't want that to happen so he said that's why he stuck around. He wanted to go lay her down on the bed. So we walked to the bedroom & he laid her down on the bed. We walked back to the living room & talked a little bit more. I told him I had to go. He said "ok, let me just go check on my baby girl". I followed him to the bedroom & we've noticed she was a light blue color. He panicked and grabbed her & said "baby wake up wake up, it's daddy please baby". Then he told me to hurry up and leave, so I left in a hurry.

I would have presented this evidence at Johnny Castro's trial but for the fact that I was threatened by others, including my child's dad, Jarrod Weaver-Mason, not to testify."

FURTHER, AFFIANT SAYETH NOT.

_____
Brittany Banda

SUBSCRIBED TO AND SWORN BEFORE ME by Brittany Banda on ___3/___ October _____, 2012.

_____
Notary Public in and for the State of Texas



THOMAS E. TAYLOR
MY COMMISSION EXPIRES
March 15, 2015

No. D-1-DC-12-904069

| THE STATE OF TEXAS | § | IN THE 403RD DISTRICT |
| | § | |
| vs. | § | COURT OF TRAVIS |
| | § | |
| JOHNNY CASTRO | § | COUNTY, TEXAS |

## ORDER SETTING HEARING ON DEFENDANT'S AMENDED MOTION FOR NEW TRIAL

On this date came on to be considered Defendant's Amended Motion for New Trial, which was timely filed and presented to this court within ten (10) days of filing pursuant to Tex. R. App. P. 21.4 and 21.6. The court finds that such motion is timely presented and that an evidentiary hearing is warranted.

IT IS THEREFORE ORDERED that Defendant's Motion for New Trial be set for an evidentiary hearing on the ____ day of _____, 2012, in the 403rd District Court of Travis County, Texas at _____.

Signed this _____ day of _____, 2012.

_____
Hon. Brenda Kennedy
District Judge Presiding

92

Unsigned Proposed Order Denying Defendant's Amended Motion for New Trial Without an Evidentiary Hearing, with handwritten notations by Defendant's Appointed Attorney on Appeal, filed Nov. 15, 2012 (CR 96)

No. D-1-DC-12-904069

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 403RD DISTRICT |
| | § | |
| vs. | § | COURT OF TRAVIS |
| | § | |
| JOHNNY CASTRO | § | COUNTY, TEXAS |

## ORDER DENYING DEFENDANT'S AMENDED
## MOTION FOR NEW TRIAL WITHOUT AN EVIDENTIARY HEARING

On this date came on to be considered Defendant's Amended Motion for New Trial, which was timely filed and presented to this court within ten (10) days of filing pursuant to Tex. R. App. P. 21.4 and 21.6. The Court considered Defendant's Amended Motion for New Trial and the Affidavit of Brittany Banda which was attached to the motion, finds that such motion is timely presented, but that an evidentiary hearing is not warranted.

IT IS THEREFORE ORDERED that no evidentiary hearing will be heard on Defendant's Amended Motion for New Trial, and that Defendant's Amended Motion for New Trial is DENIED.

Signed this _____ day of _____, 2012.

_____
Hon. Brenda Kennedy
District Judge Presiding

Filed in The District Court
of Travis County, Texas

NOV 15 2012

At_____11:06_____ M.
Amalia Rodriguez-Mendoza, Clerk

Nov. 15, 2012 - presented this proposed order to Court coordinator, who presented it to J. Kennedy. Judge indicated she would let 75-day period elapse and did not sign proposed order

Gregory Sherwood
Appointed Attorney on Appeal
for Defendant Johnny Castro